CENTRAL SOUTH CAROLINA CHAPTER, SOCIETY OF PROFESSIONAL JOURNALISTS, SIGMA DELTA CHI, Robert Hitt, Individually as news reporters and as members, officers and directors of the Central South Carolina Chapter, Society of Professional Journalists, Sigma Delta Chi, South Carolina Broadcasters Association, Dr. Richard Uray, Individually and as Executive Manager of the South Carolina Broadcasters Association, South Carolina Press Association, the Enterprise, Inc., Edward M. Sweatt, Individually as President of the South Carolina Press Association and as a shareholder and member of the Board of Directors of the Enterprise, Inc., and Carolyn Kay Harris, Plaintiffs,

v.

The Honorable J. Robert MARTIN, Jr., United States District Court for the District of South Carolina, Mark W. Buyck, Jr. Esq. United States District Attorney for the District of South Carolina. J. Elliot Williams, United States Marshal for the District of South Carolina, and Miller C. Foster, Jr., United States Clerk for the District of South Carolina, Defendants.

Civ. A. No. 77–575.

United States District Court,
D. South Carolina.

May 2, 1977.

Mitchell Rogovin, George T. Frampton, Jr., Joel I. Klein, David R. Boyd, Washington, D. C., Jack C. Landau, Reporters Committee for Freedom of the Press, Washington, D. C., James C. Harrison, Jr., Costa M. Pleicones, Columbia, S. C., for plaintiffs.

Thomas E. Lydon, Jr., U. S. Atty., Wistar D. Stuckey, Glen E. Craig, Asst. U. S. Attys., Columbia, S. C., for defendants.

1. Although the plaintiffs have named this Court as a party defendant in the captioning of this action, this Court will address the claims raised in the complaint in light of the possible collateral consequences a determination may have

## ORDER

MARTIN, Chief Judge.

This matter is before the Court upon the above captioned parties'[1] cross-motions for summary judgment upon the pleadings pursuant to a complaint for injunctive and declaratory relief seeking to void an order issued by this Court on May 31, 1976 in the criminal case of *United States v. J. Ralph Gasque, et al.,* No. 76–104. The plaintiffs with the exception of one who is a newspaper subscriber are newsmen, journalists and news media establishments. The order issued May 31st reads as follows:

"For reasons appearing to the Court it is Ordered that the above captioned case is scheduled for trial in the United States District Courtroom, Columbia, South Carolina, on June 21, 1976. It is further ordered that

(1) Extra judicial statements by trial participants in the trial, including lawyers, parties, witnesses, jurors and court officials, which might divulge prejudicial matter not of public record in the case are prohibited.

(2) All participants in the trial, including lawyers, parties, witnesses, jurors and other officials shall avoid mingling with or being in the proximity of reporters, photographers and others in the entrances to and the hallways in the courthouse building, including the sidewalks adjacent thereto, both in entering and leaving the courtroom and the courthouse during recesses in the trial.

(3) The names and addresses of prospective jurors are not to be released except on Order of the Court, and no photographs shall be taken and no sketch made of any juror within the environs of the Court.

(4) All witnesses are prohibited from news interviews during the trial period.

(5) The United States Marshal at the direction of the Court will allocate seating

on the pending criminal case before this Court which is the subject of the May 31st order now under attack and in light of the unique posture of these cases.

of spectators and representatives of the news media, provided, however,

> (a) No member of the public or news media representative shall be permitted at any time within the bar railing, except to specific seats designated for their use.
>
> (b) Allocation of seats to the news media representatives, if there be an excess of requests, will take into account any pooling arrangement that may be agreeable among the newsmen."

The plaintiffs do not contest the validity of section five of the May 31st order in this action. They do, however, contest the remaining portions of the order and contend that it constitutes a prior restraint on freedom of the press in violation of their First Amendment rights accorded by the United States Constitution. As the basis of their contentions, the plaintiffs assert that the order has effectively destroyed the right of the press to print the news by destroying its right to gather news from important sources, a right they contend is necessarily a First Amendment corollary of the right to report public proceedings and the conduct of public officials. Additionally, the plaintiffs contend that the order was issued in violation of their constitutional due process right to be served notice and to be heard prior to its issuance and that the order suffers from vagueness and overbreadth.

The claims asserted by the plaintiffs are new to this Court only in the sense that this is the first and only proceeding before this Court to which it may properly address the same. Prior to the instant action, the identical plaintiffs had instituted an appeal or in the alternative a petition for a writ of mandamus attacking the provisions of the May 31st order in the United States Court of Appeals for the Fourth Circuit. As it was apparent to that Court that the complainants were not parties to the criminal proceedings against J. Ralph Gasque and his codefendants and that their right to relief from the order was far from clear and indisputable, it dismissed the appeal

and denied, in the alternative, the petition for mandamus. A stay order which had been previously issued against the criminal case by the Court of Appeals was dissolved as well. *Central South Carolina Chapter, Society of Professional Journalists, Sigma Delta Chi et al. v. United States District Court for the District of South Carolina et al.,* 551 F.2d 559 (4 Cir. 1977).

The plaintiffs now seek independent recourse against the provisions of the May 31st order, apart from the proceedings of the criminal case, by way of a motion to stay or preliminary injunction of the order and by way of permanent injunctive and declaratory relief against the same. That complaint was served on the interested parties named as defendants and an answer and memorandum has since been submitted by the United States District Attorney for the District of South Carolina. The answer, entitled motion to dismiss pursuant to Rule 12(b), F.R.Civ.P. or in the alternative, motion for summary judgment pursuant to Rule 56, F.R.Civ.P. was filed on behalf of the named defendants, Williams, Foster and on behalf of Thomas Lydon, who recently succeeded Mark Buyck as the District Attorney for the District of South Carolina. In reply, the plaintiffs have filed a pleading and memorandum entitled opposition to motion to dismiss and cross-motion for summary judgment. The plaintiff also requested in that pleading that this Court enter a final order as promptly as possible in recognition of the urgency of the issues raised in the complaint.

It is immediately recognized and agreed to by the parties that there are no disputed facts and that the issues raised and joined by the pleadings, affidavits and exhibits attached thereto and the previous proceedings before the Court of Appeals are purely legal questions and that the motion for a stay or preliminary injunction may be determined by this Court in absence of an evidentiary hearing without prejudice to any of the interests involved.[2] It is also

---

2. The plaintiffs had earlier submitted a letter to this Court requesting an evidentiary hearing

upon the motion for a stay or preliminary injunction. The government's answer to the

apparent that the action for permanent injunctive and declaratory relief should be advanced and expedited in order that a final determination in this matter be made with some urgency. The issues raised thereto are also without factual dispute or controversy and are purely legal questions so as to support the consolidation of this action for a final determination in the absence of a hearing without prejudice to any of the interests involved and as agreeable by the parties. Accordingly, the remainder of this order will be devoted to the merits of the claims raised that the May 31st order constitutes a prior restraint against the press in violation of the First Amendment and that the order was issued in violation of the plaintiffs' Fifth Amendment due process rights to notice and a hearing and that the order suffers from vagueness and overbreadth.

■■■ There first appears to be a serious question of standing for the plaintiffs to assert this action. The concept of standing focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The relevant inquiry, assuming justiciability of the claim, is whether the plaintiff has shown injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Article III limitation of the Constitution. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The concept of standing has also been said to focus upon the inquiry whether "the interest sought to be protected by the complainant

is arguably within the zone of interests to be protected or regulated by statute or constitutional guarantee in question" *Data Processing Service v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *C. B. S. v. Young,* 522 F.2d 234 (6 Cir. 1975).

Turning to the latter concept of standing first, it is immediately recognized that this is not a case of direct restraint upon the right of the public or the press to publish or speak what it knows, but is rather a restraint upon trial participants in a criminal case (none of which are plaintiffs in this civil action) to prohibit the trial participants from divulging extrajudicial prejudicial matters not of public record in the pending criminal case. The plaintiffs contend that such a restraint destroys its right to publish news by destroying its right to gather news. They argue that the right to gather news is a necessary First Amendment corollary to the right to publish and report public proceedings or in other words, that the interest in gathering news is within the zone of interests to be protected by the constitutional right to publish and speak.

While *C. B. S. v. Young* (supra) would appear to stand for the proposition that the news media have standing to assert a claim that restraints on trial participants in a civil case deny access to potential sources of information and therefore deny members of the press their constitutional right to gather news, this Court would find the case of questionable authority. *C.B.S.* relies on dicta from *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) that news gathering is not without some First Amendment protection, thus the conclusion that the news media has standing to assert the claim that any news gathering restraints raise constitutional First Amendment issues. However, *Branzburg* also indicated that the First Amendment does not guarantee the press a constitutional right

---

complaint followed shortly thereafter and contended that there was no necessity for a hearing as the matters raised and joined by the pleadings were purely legal questions. Therefore, this court found it appropriate to issue an order on April 19, 1977 requiring an expedited

reply from the plaintiffs including pleadings, if any, which would support a showing of the necessity for a hearing. As indicated the plaintiffs have agreed the matters raised may be resolved without a hearing.

of special access to information not available to the public generally, citing *Zemel v. Rusk*, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965) or stated differently that the right to speak and publish guaranteed by the First Amendment does not carry with it the unrestrained right to gather information. *Branzburg* also cited with approval *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) wherein it was stated that "the trial court might well have proscribed extrajudicial statements by any lawyer, party, witness or court official which divulged prejudicial matters."

Most courts have addressed the question of the news media's right of access to particular information in terms of equal protection, finding that if the public has a right to certain information then the press, which has no greater or lesser right is also entitled to the information. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Saxbe v. Washington Post Co.*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974), see also Judge Winter's dissent, *U. S. v. Steelhammer*, 539 F.2d 373, (4 Cir. 1976). This Court believes in light of *Branzburg, Zemel, Sheppard, Pell* and *Saxbe* that any right to particular information apart from equal protection considerations is factually limited to information which could be categorized as "public information" such as public records, *McCoy v. Providence Journal*, 190 F.2d 760 (1st Cir. 1961), cert. den., 324 U.S. 894, 72 S.Ct. 200, 96 L.Ed. 669, records filed with the Clerk of Court, *In re Washington Post, et al. (U. S. v. Mandel)*, (4 Cir. 1976) and the transpirations of a public trial, *Craig v. Harney*, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947).

■ As Mr. Justice Stewart stated in an address on the subject of the news media's right to know in 1974:

"So far as the Constitution goes, the autonomous press may publish what it knows, and may seek to learn what it can. But this autonomy cuts both ways. The press is free to do battle against secrecy and deception in government. But the press cannot expect from the Constitution any guarantee that it will succeed. *There is no constitutional right to have access to particular government information or to require openness from the bureaucracy. . . .* The Constitution in other words establishes the contest, not its resolution. (emphasis added) *United States v. Mitchell*, 386 F.Supp. 639 (D.C. D.C.1975).

■ Because the information particularly sought in connection with this civil action does not fall into the class and category of public information this Court does not find that the press has any First Amendment right to gather it.

■ Turning to the former concept of standing, this Court's order of May 31st does not prohibit the public or press from doing anything but only limits the participants in the criminal case from conducting themselves in certain manners and therefore neither the public nor the press has suffered any personal injury other than the generalized complaint that they have been denied their "right" to know.[3] When the asserted harm or injury, if any, is a "generalized grievance" shared in substantially equal measure by all or a large class of citizens, that harm alone, if any, normally does not warrant exercise of jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The plaintiffs here make no allegation that the purported injury sustained by them is no greater nor lesser than the public's at large since the injury which they contend is proscribed by the Constitution is no more than the lack of knowledge of certain purportedly newsworthy information. Further, the plaintiffs make no allegation or showing that even if no order existed that the alleged injury would be diminished. Although the plaintiffs aver that the trial participants will not talk to them as a result of the May 31st order, it is merely speculation that the trial participants would voluntarily disclose

---

3. As was noted in *Branzburg* at ftn. 22, citing *Zemel*, there are few restrictions on action

which could not be clothed by ingenious argument in the garb of decreased data flow.

such information to the plaintiffs in absence of the order. *Simon* (supra).

Accordingly, this Court finds that the plaintiffs have no standing to assert the particular claims raised herein since they have no right to the particular information sought and since their purported injury is shared by the public in general and is speculatively remedial.

 If it was arguable that the plaintiffs do in fact have standing to assert their claims then it is apparent to this Court that they are not entitled to the relief they seek. This Court has always recognized that "Courts are a branch of government and a criminal proceeding involving officials holding high positions of public trust must peculiarly remain open for the closest scrutiny and discussion by citizens." *United States v. Mitchell* (supra). It must also be recognized that our system of government in guaranteeing rights to its various citizens also guarantees any citizen accused of a crime the right to a fair and impartial trial, a guarantee which the government has a duty to assure all its citizens. As recognized in *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), a fair trial, "the most fundamental of all freedoms" must be maintained at all costs. While there is no question that "what transpires in the courtroom is public property," *Craig v. Harney,* 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947) the Court also has the duty and authority to assure to the extent possible that prejudicial evidence will not be presented to prospective jurors prior to the trial of a criminal case in order to assure that the defendant is tried before the public by a fair and impartial jury.[4] While it is conceded that any order of the Court which is issued to assure a criminal defendant of a fair trial that directly prohibits or restrains publication of informa-

tion already gained or commentary on judicial proceedings held in public is a prior restraint in violation of the First Amendment and must be justified by a clear and present danger that the defendants' right to a fair trial is in jeopardy, the clear and present danger test does not apply when the Court issues an order such as the May 31st order which does not constitute a prior restraint on the press' or public's right to speak or publish but only restrains the trial participants from certain conduct thereby proscribing the flow of prejudicial information to be gained by non trial participants. Recently, the United States Supreme Court in *Nebraska Press Assoc. v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) has stated that the trial judge must take strong measures to insure than an accused is accorded a fair and impartial trial, citing *Sheppard* and that "where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial", the trial judge should continue the case, transfer it, sequester the jury, or see that neither "the accused, witnesses, court staff, nor enforcement officers coming under jurisdiction of the Court should be permitted to frustrate its functions."

 Although the *Nebraska* case may be read that to permit a prior restraint of information already in the hands of the press or public, is to require a clear and present danger to a fair trial, *Nebraska* has approved the standard set out in *Sheppard* that extrajudicial statements of trial participants which divulge prejudicial information may be proscribed if there is a reasonable likelihood that prejudicial news prior to trial will jeopardize the defendant's right to a fair trial.[5] The Report of the Kaufman Committee on the operation of the Jury System on the "Free Press-Fair Trial" Issue, 45 F.R.D. 391 (1968) as adopted by the

---

4. The United States Supreme Court has interpreted the requirement of an impartial jury to mean that "the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado ex rel. Attorney*

*General,* 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879 (1907).

5. This Court found that there was a substantial likelihood of such when it issued the May 31st order.

Judicial Conference of the United States is of like effect. See also *United States v. Tijerina,* 412 F.2d 661 (10 Cir. 1969), cert. den., 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452; *Farr v. Pitchess,* 522 F.2d 464 (9 Cir. 1975), cert. den., 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1203 (1976). The conclusion to be drawn from reading *Nebraska* is that proscriptions on trial participants' prejudicial statements in a criminal trial are not to be considered as prior restraints on non-trial participants' First Amendments rights to publish and comment upon judicial proceeding and that proscriptions on trial participants' prejudicial statements are to be judged by the *Sheppard* standard as it regulates the conduct of the participants in the trial.

■ Prior to entering the May 31st order, from the Court's reading of various newspapers within the State of South Carolina and watching and listening to reports on the broadcast media, this Court took notice of the widely publicized and sensational nature of the criminal case against J. Ralph Gasque, a state senator, and his co-defendants. The publicity was and remains extensive as can readily be evidenced by the collected newspaper clippings presented by the plaintiffs in this action and those presented in the previous proceedings before the Court of Appeals and this collection represents only a portion of the total continuing publicity. The Court has also taken notice of the numerous and extraordinary inquiries made by representatives of the press and news media to this Court concerning this particular criminal case. The Court has also taken notice, that the information contained in the media reports contrary to the assertions of the plaintiffs, is unrestrained and often of a prejudicial nature and would be inadmissible evidence at a trial. All such information, particularly prejudicial information, that is widely disseminated has the effect of making more difficult the selection of an impartial jury.

Selection becomes particularly more difficult when statements of trial participants in particular are widely published. Thus in widely published or sensational cases, such as this criminal case, where the statements of trial participants are likely to appear in a widely disseminated manner, there is a substantial likelihood that prospective jurors are unwittingly exposed to statements constituting prejudicial inadmissible evidence that would jeopardize the defendants' right to a fair trial. To the extent that the Court has authority, it is the duty of the Court to prevent that kind of jury prejudice. This Court considered numerous factors pertaining to the extent and nature of the pretrial news coverage of this criminal case and considered whether other measures [6] would be likely to mitigate the effects of likely dissemination of unrestrained comment by the trial participants in this criminal case and concluded and remains convinced that the proscribed prejudicial extrajudicial statements of trial participants are likely to appear in a widely disseminated manner and that without such restraint upon the trial participants as imposed by the May 31st order, there is a substantial likelihood that the defendants would be denied a fair trial. Inasmuch as this Court has determined that the defendants' right to a fair trial is in substantial likelihood of jeopardy without the May 31st restraint on trial participants, the plaintiffs are not entitled to the relief they seek that the order be vacated and the May 31st order will continue to remain in full force and effect.

■ The plaintiffs also contend that the May 31st order is vague and overbroad. Specifically, the plaintiffs contend that such terms as "mingling" and "the environs of the court" are not defined and that the order is capable of being read to prohibit conduct that could not reasonably be deemed to represent a threat to the defendants' right to a fair trial or the integrity of the Court. The term "mingling" is found in

---

**6.** Although the ideal would be to place prospective jurors in sequestration prior to trial it is simply not practical.

the second paragraph of the May 31st order and prohibits specified persons (trial participants) from "mingling or being in the proximity of reporters, photographers and others" (nontrial participants) while in the courthouse or on courthouse grounds. That paragraph of the order is no broader than necessary to its appropriate purpose to assure orderliness in and around the courthouse and to effectuate the ban on extrajudicial prejudicial statements by trial participants and the Court has the authority to issue such an order in these circumstances. See "Free Press-Fair Trial" at p. 410. Neither is the term "mingling" vague since it has understandable connotation that trial participants are to avoid situations or confrontations that might compromise the ban on their statements. The term "environs of the court", a term broad enough and specific enough to encompass the courthouse and its grounds which are expected to be fully utilized for this criminal proceeding, is found in paragraph three of the May 31st order which prohibits photographs[7] from being taken or sketch of any juror within the environs of the court. It must be noted that sketching is not prohibited per se, but only in so far as it relates to jurors. The reason for the limited ban on sketching jurors is that for the most part, jurors are new to the courtroom and have a very solemn duty to hear the evidence of the case. From past experience of juror complaints and this Court's own observations, the Court found that jurors are distracted and feel uneasy when they realize that they have become the subject of an artist. Certainly the Court has the authority to prevent activity which distracts the jury from their duty under law. See "Free Press-Fair Trial" at p. 411.[8] At this point, it should also be noted that this Court finds that there is no right by the plaintiffs as members of the press or the public in general to obtain the names and addresses of the prospective jurors in advance of trial as prohibited also by paragraph three of the May 31st order. The management of the jury is a function solely within the authority of the trial court and when the venire is called in open court, there is no question that upon the seating of a juror in a case that his identity will then become a public record.

Neither does the Court feel that the May 31st order unreasonably abridges any public right to know or media right to information since the right, if any, is not denied but merely delayed for a limited period. A defendant is only brought to trial after an indictment by a Grand Jury. The indictment is returned in open court and is a public record. The trial of a defendant is held in open court to which all members of the public and media have a right to attend and hear the testimony of the witnesses. Finally, the May 31st order has no purpose or life beyond the trial of the case and no restriction upon any trial participant after the trial of the case. This Court's order unlike that issued in *C. B. S. v. Young* (supra) which incidentally was a civil as opposed to a criminal case, is very limited in purpose, time and people affected to assure the defendants a fair trial. It prohibits no conduct other than that which would in substantial likelihood jeopardize the defendants' right to a fair trial and is specifically and narrowly drawn to encompass only certain types of conduct. After the trial anyone can do or say anything they please but until that time comes, the provisions of the May 31st order will remain in full force and effect.

 Finally, the plaintiffs contend that the May 31st order was issued without prior notice and hearing to the plaintiffs in contravention of their Fifth Amendment right to due process. This Court does not agree

---

**7.** The ban on photographs is also consistent with Rule 53, F.R.Crim.P. which prohibits the taking of photographs in the courtroom during the progress of judicial proceedings and is also consistent with the general standing order of this Court issued May 14, 1969. Further, the plaintiffs admit in their reply brief they do not challenge the ban on photographs.

**8.** While the Court is aware it has allowed unlimited sketching in other cases, those cases have not been the subject of extensive pretrial

that the news media and public should be given notice and an opportunity to be heard before a Court should be permitted to issue such an order as the May 31st order.[9]

This Court, in imposing the restrictions of the May 31st order has followed the recommendations of the Kaufman Committee, "Free Press-Fair Trial" as adopted by the Judicial Conference of the United States and has not violated established legal concepts in implementing such order.

Accordingly,

IT IS ORDERED that the plaintiffs' complaint be and the same is hereby dismissed. The May 31st 1976, order issued by this Court in *United States v. J. Ralph Gasque, et al.*, No. 76–104 will continue to remain in full force and effect.[10] Let copies of this order be sent to the parties.

publicity as this criminal case or the subject of such public interest.

9. The plaintiffs cite *U. S. v. Schiavo*, 504 F.2d 1 (3rd Cir. 1974), cert. den. sub. nom., *Ditter v. Philadelphia Newspapers Inc.*, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 for the proposition that they are entitled to prior notice and hearing. In *Schiavo*, the trial judge issued a collateral order in a criminal case directly against the press who were non-parties to the criminal case but parties to the collateral order since that order prohibited the press from publishing and reporting upon certain statements. The May 31st order in this case does not restrict the press from publishing or reporting at all and is only directed at the conduct of trial participants in the criminal case.

10. It is of significant note that this Court, since the inception of this criminal case and forthcoming inquiries by the press, has continuously informed numerous members of the press and public, some of whom are plaintiffs to this complaint, that it will be available during the trial to clarify, explain or consider otherwise provisions of the May 31st order they deem necessitate such if they would make a presentation through an appropriate representative committee. Upon an appropriate inquiry, this Court will then examine any provision of the order that merits clarification, explanation or consideration otherwise in light of the requisites of the trial.