Joe JAMES, Judy James, Chuck Hadley, Gwen Hadley, Wayne Steger, Sabrina Steger, and Mike Breen, Petitioners,

v.

R. Jeffrey HINES, Judge McCracken Circuit Court, Respondent,

Commonwealth of Kentucky, and Michael Carneal, Real Parties In Interest.

No. 1998–CA–001955–OA.

Court of Appeals of Kentucky.

Aug. 17, 1998.

As Modified Oct. 16, 1998.

Appeal Dismissed April 22, 1999.

Mike Breen, Bowling Green, for Petitioner.

J. Michael Dalton, James T. Blaine Lewis, Woodward, Hobson & Fulton, L.L.P. Louisville, for Respondent.

Tim Kaltenbach, Commonwealth Attorney, Jim Harris, Assistant Commonwealth Attorney, Paducah, for Real Party in Interest, Commonwealth of Kentucky.

No Appearance for Real Party in Interest Michael Carneal.

Before BUCKINGHAM, GUIDUGLI and HUDDLESTON, JJ.

HUDDLESTON, Judge.

Petitioners, attorney Michael Breen and the family members of three young girls allegedly slain by Michael Carneal, filed an original action, pursuant to Rules 76.36 and 81 of the Kentucky Rules of Civil Procedure, asking this Court to prohibit enforcement of two orders entered by Respondent, R. Jeffrey Hines, Judge, McCracken Circuit Court, on June 24, 1998, and July 28, 1998.

On June 23, 1998, petitioners held a press conference. They released a psychiatric report on Carneal, alleged that the investigation into their daughters' deaths was inadequate, and expressed their concern that the Commonwealth would not seek the maximum penalty for Carneal. On June 24, 1998, Judge Hines, sua sponte, enjoined attorneys representing the parties in the criminal action against Carneal, persons working for these attorneys, police officers, potential witnesses, and attorneys and individuals contemplating civil litigation from releasing or authorizing the release of extrajudicial statements related to *Commonwealth v. Carneal,* Indictment No. 97–CR–350. On July 28, 1998, Judge Hines signed an order which struck petitioners' pleadings contesting the June 24, 1998, injunction and prohibited any party other than the Commonwealth of Kentucky or Carneal from filing pleadings in the criminal action without leave of court. This action followed.

■ Prohibition will only be granted if (1) a trial court is proceeding outside its jurisdiction and there is no adequate remedy by appeal; or (2) a trial court is proceeding within its jurisdiction, but erroneously, there is no adequate remedy by appeal, and irreparable harm or great injustice will result if no relief is obtained. *Potter v. Eli Lilly and Co.,* Ky., 926 S.W.2d 449, 452 (1996).

■ Petitioners argue that prohibition is the appropriate remedy because Judge Hines is acting within his jurisdiction, but improperly. They contend the June 24, 1998, order deprives them of their right to free speech and denies them due process which results in irreparable harm. Restraining free speech constitutes immediate and irreparable harm, if unauthorized. *Nebraska Press Association v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683, 697–98 (1976). Furthermore, a party has standing to contest an injunction constraining his actions, even if not a party to the principal action. *Courier Journal v. Marshall,* 828 F.2d 361, 363 (6th Cir.1987); *CBS, Inc. v. Young,* 522 F.2d 234, 237–38 (6th Cir.

1975). Prohibiting individuals from contesting an order that constrains their conduct removes any adequate remedy by appeal.

■■■ Petitioners first argue that Judge Hines improperly asserted jurisdiction over them because they were not before the circuit court as parties to the criminal proceeding involving Carneal. A trial court may enjoin parties, attorneys and witnesses to a case from making extrajudicial statements about that case. *See Sheppard v. Maxwell*, 384 U.S. 333, 359, 86 S.Ct. 1507, 1520, 16 L.Ed.2d 600, 618 (1966); *In Re Russell*, 726 F.2d 1007, 1010 (4th Cir.1984). Petitioners concede that as families of the victims, they will likely be witnesses for the Commonwealth in the penalty phase of this trial. Therefore, petitioners are subject to the trial court's jurisdiction, and may be enjoined by the court from making extrajudicial statements.

■■■ Petitioners next argue that the order entered on June 24, 1998, violated their right to free speech under both the United States Constitution, Amendment I [1], and the Kentucky Constitution, Section 8 [2], and deprived them of their right to due process of law. In the June 24, 1998, order, Judge Hines enjoined dissemination of extrajudicial statements including, but not limited to:

a. The prior criminal record of the defendant [Carneal] including arrests, convictions, or other charges of crime regardless of disposition;

b. The character and reputation of the defendant;

c. The existence of the contents of any alleged confession, statement or admission made by the defendants or the failure or refusal of the defendant to make any statement;

d. The existence or non-existence of any evidence or prospective witnesses relating to the above-captioned case;

e. The identity, prospective testimony or credibility of any prospective witness;

f. The possibility or likelihood of a plea of guilty to offenses charged, or any lesser offenses whether by the defendant or a prospective witness;

g. Any opinion as to the guilt or innocence or as to the merit of the case or the evidence to be presented therein;

h. The fact of the offense and the fact that the defendant has been arrested and charged with that offense;

i. Any medical or mental health examinations or records of the defendant.

■■■ Prior restraint on speech is presumptively unconstitutional. *Nebraska Press*, 427 U.S. at 558–59, 96 S.Ct. at 2802, 49 L.Ed.2d at 697. Prior restraint must be supported by findings that a "clear and present danger of actual prejudice or an imminent threat" to the defendant is present. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1069–71, 111 S.Ct. 2720, 2742, 115 L.Ed.2d 888, 919–21 (1991) (citations omitted). However, parties before a court may be regulated under a less demanding standard than that established in *Nebraska Press*. If a trial court recognizes that there is a substantial likelihood of material prejudice to the defendant, it may take measures to protect the defendant and insure a fair trial. *Gentile*, 501 U.S. at

1. "Congress shall make no law ... abridging the freedom of speech...."

2. "Printing presses shall be free to every person who undertakes to examine the proceedings of ... any branch of government, and no law shall ever be made to restrain the right thereof. Every person may freely and fully speak, write and print on any subject, being responsible for the abuse of that liberty."

1074–75, 111 S.Ct. at 2745, 115 L.Ed.2d at 923.

■ This case has drawn extensive national and local attention. However, "pervasive, adverse publicity does not inevitably lead to an unfair trial." *Nebraska Press*, 427 U.S. at 554, 96 S.Ct. at 2800, 49 L.Ed.2d at 695. All the constitution requires is that a defendant receive a trial by an impartial jury capable of fairly considering all of the evidence before rendering a verdict on the defendant's guilt or innocence. *See Sheppard*, 384 U.S. at 361, 86 S.Ct. at 1522, 16 L.Ed.2d at 613–14. Nevertheless, freedom of discussion must yield if it infringes on a defendant's rights under the Sixth Amendment. *Pennekamp v. State of Florida*, 328 U.S. 331, 347, 66 S.Ct. 1029, 1037, 90 L.Ed. 1295, 1303–04 (1946).

■ The trial court may resolve a potential conflict by entering an order limiting trial participants from disclosing information prior to trial. However, before entering such an order, the court must first determine whether there is a reasonable likelihood that pretrial publicity will prejudice the defendant's right to a fair trial. *See Gentile* 501 U.S. at 1074–76, 111 S.Ct. at 2744–45, 115 L.Ed.2d at 923–24. The court should consider, among other factors, the nature and extent of the publicity, including whether the information would be admissible at trial, whether the evidence is already generally known to the public, and whether the dissemination of the information would infringe the constitutional rights of the defendant. *See Ashland Publishing Co. v. Asbury*, Ky.App., 612 S.W.2d 749, 753 (1980).

■ If the trial court determines that there is a reasonable likelihood of material prejudice, it should consider prophylactic measures before remedial measures are undertaken. *Nebraska Press*, 427 U.S. at

562, 96 S.Ct. at 2804, 49 L.Ed.2d at 699. Less restrictive measures include: (1) extensive voir dire; (2) continuance of the trial; (3) sequestration of the jury; (4) change of venue; and (5) explicit jury instructions and admonitions. *Sheppard*, 384 U.S. at 358–63, 86 S.Ct. at 1519–22, 16 L.Ed.2d at 620. Each of these alternatives must be considered prior to rejecting them as inadequate. *Dow Jones & Company, Inc. v. Simon*, 842 F.2d 603, 611 (2nd Cir.1988) *cert. denied*, 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988).

■ Finally, if the trial court concludes that injunctive relief is required, the injunction must be narrowly drawn. *See Young*, 522 F.2d at 238 ("[t]he restraint must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact on First Amendment freedoms") The participants cannot be prohibited from stating that which is in the public domain—that an indictment was issued against Carneal for allegedly killing their three daughters, that he has been arrested, and that the case is scheduled for trial. Likewise, the parties cannot be prohibited from criticizing the manner in which government officials or others are handling the case. *See United States v. Ford*, 830 F.2d 596, 600 (6th Cir.1987). The injunction can only prohibit dissemination of information not within the public domain, such as the psychiatric report released by petitioners to the press.

■ Prior to issuing a permanent injunction which prohibits the dissemination of information by parties, counsel and witnesses, the court should hold an evidentiary hearing at which all potentially enjoined persons are given a right to be heard. *See Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir.1996) (holding that ex parte orders restraining free speech have "no place" in the "First Amendment realm" where no

showing is made that it is impossible to notify the interested parties and give them an opportunity to be heard).[3] *See also Capital Cities Media, Inc. v. Toole,* 463 U.S. 1303, 1305–07, 103 S.Ct. 3524, 3526–27, 77 L.Ed.2d 1284, 1287–89 (Brennan, Circuit Justice 1983) (granting stay of order prohibiting release of juror names and addresses where order was entered without a hearing and without findings of fact justifying it). The court should make clearly articulated findings of fact addressing the probability that the defendant's right to a fair trial or his constitutional rights would be irreparably damaged. *Young,* 522 F.2d at 239. The injunction must identify less restrictive alternatives for eliminating the prejudice, such as sequestration or voir dire, and explicitly state why they are inadequate in the present case. *Dow Jones,* 842 F.2d at 611. Finally, the injunction must be narrowly drawn, and must address only those actions by counsel or witnesses which would materially prejudice the defendant's right to a fair trial.

 Judge Hines, faced with petitioners' release of Carneal's psychiatric report, quickly acted to curtail a trial by media. The prosecution and petitioners were at odds, and Judge Hines acted to insure that Carneal and the Commonwealth would have a fair trial. Nevertheless, "any restrictive order involving a

prior restraint upon First Amendment freedoms is presumptively void and may be upheld only on the basis of a clear showing that an exercise of First Amendment rights will interfere with the rights of the parties to a fair trial." *Young,* 522 F.2d at 241. The trial court in the case *sub judice* did not find that there was a reasonable likelihood of material prejudice, did not consider prophylactic measures, and did not limit the scope of its injunction.

Therefore, it is ORDERED that the petition seeking a writ of prohibition is GRANTED. Judge Hines is PROHIBITED from enforcing the orders of June 24, 1998, and July 28, 1998. Judge Hines may conduct a hearing and enter a pretrial order in accordance with this opinion.

Regardless of any further action taken by Judge Hines, this Court cautions attorneys involved in this case, including those representing witnesses and potential witnesses, that they are bound by Supreme Court Rule (SCR) 3.130(3.6).[4]

All concur.

---

3. We perceive that Judge Hines' June 24, 1998, order was a *permanent* injunction rather than a temporary restraining order as evidenced by the language in the order and his refusal to allow the order to be challenged by the victims' families despite their standing even after a motion to enter a special appearance to contest the gag order was filed. *See Young,* 522 F.2d at 237; *Dow Jones,* 842 F.2d at 606–08. Ex parte temporary restraining orders which gag parties, witnesses, etc., may be appropriate under certain circumstances. *See Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226 (6th Cir.1995).

4. SCR 3.130(3.6) provides:
 (a) A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.
 (b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:

(1) The character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;

(2) In a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;

(3) The performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

(4) Any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration;

(5) Information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial; or

(6) The fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.

(c) Not withstanding paragraphs (a) and (b)(1–5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:

(1) The general nature of the claim or defense;

(2) The information contained in a public record;

(3) That an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim or defense involved and, except when prohibited by law, the identity of the persons involved;

(4) The scheduling or result of any step in litigation;

(5) A request for assistance in obtaining evidence and information necessary thereto;

(6) A warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(7) In a criminal case:

(I) The identity, residence, occupation and family status of the accused;

(ii) If the accused has not been apprehended, information necessary to aid in apprehension of that person;

(iii) The fact, time and place of arrest; and

(iv) The identity of investigating and arresting officers or agencies and the length of the investigation.