**Dennis PEDINI, Petitioner,**

v.

**Jim BOWLES, Sheriff of Dallas County, Texas, and The Honorable Manny Alvarez, Judge of Criminal District Court No. 5, Respondents.**

No. 3:96–CV–2395–T.

United States District Court, N.D. Texas, Dallas Division.

Oct. 10, 1996.

1021

Michael P. Heiskell, Johnson, Vaughn & Heiskell, Fort Worth, TX, for Petitioner.

Dolena Westergard, Assistant District Attorney, Federal Section, Dallas, TX, for Jim Bowles.

Kerry Young, Chief Staff Attorney, Criminal District Courts, Dallas, TX, for Manny Alvarez.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT

MALONEY, District Judge.

On September 9, 1996, United States Magistrate Judge Kaplan issued Findings, Conclusions and Recommendation in the above matter. Petitioner has failed to file objections to the Findings, Conclusions and Recommendation of the Magistrate Judge, and the time to do so has passed.

The Court has considered and made the required independent review of the pleadings, files and records in this case, and the Findings, Conclusions and Recommendation of the Magistrate Judge. Having done so, the Court is of the opinion that the Findings, Conclusions and Recommendation of the Magistrate Judge are correct and they are ADOPTED as the Findings and Conclusions of the Court.

Judgment will be entered accordingly.

It is so ORDERED.

## FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

KAPLAN, United States Magistrate Judge.

This case has been referred to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and Local Rule 1.3. The findings and recommendation of the magistrate judge are as follows:

## PROCEDURAL BACKGROUND

Petitioner Dennis Pedini was held in contempt of court for violating a "gag" order entered by a state district judge in a highly publicized drug case. Punishment was assessed at thirty days in the county jail and a $500 fine.[1] Petitioner filed an original application for writ of habeas corpus in the Texas Court of Criminal Appeals. Leave to file was denied on July 24, 1996. *Ex parte Pedini*, No. 31,149–01. He filed this habeas petition in federal court on August 23, 1996.

An expedited hearing was held on September 5, 1996. Michael P. Heiskell appeared on behalf of petitioner. Dolena T. Westergard appeared on behalf of Respondent Jim Bowles. Kerry W. Young appeared on behalf of Respondent Manny Alvarez. The Court has considered the record, evidence, and argument of counsel. The legal issues have been fully briefed by the parties and this matter is ripe for determination.

## ISSUES PRESENTED

Petitioner contends that the "gag" order entered by the respondent trial judge is overly broad and violates his right to free speech under the first amendment. He maintains that there was no showing of a clear or serious threat to the fairness of the trial or that such a threat was posed by the type of publicity that would result from his statements. Petitioner further argues that the trial judge failed to consider less restrictive alternatives to mitigate any harm caused by extensive pretrial publicity.[2]

## COLLATERAL BAR

Respondent first questions whether petitioner can challenge the validity of the "gag" order in an application for writ of habeas corpus. He argues that the order should have been attacked in a separate proceeding before it was violated. This "collateral bar rule" was approved by the United States Supreme Court in *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). In *Walker*, the Supreme Court upheld an Alabama procedural rule that prohibits a party from challenging a court order on collateral review. *Walker*, 388 U.S. at 318–20, 87 S.Ct. at 1831–32. However, a state is not *required* to adopt the collateral bar rule as a matter of federal law. *See Zal v. Steppe*, 968 F.2d 924, 927 (9th Cir.), *cert. denied* 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992). Texas has expressly rejected such a rule in cases where a person has been confined for disregarding an unconstitutional restriction on protected speech. *Ex parte Tucci*, 859 S.W.2d 1, 2 (Tex.1993), *citing Ex parte McCormick*, 129 Tex.Crim. 457, 88 S.W.2d 104 (1935) (gag order). Therefore, this Court can address the merits of petitioner's claim.

## CONSTITUTIONAL VALIDITY OF THE "GAG" ORDER

This case presents a classic confrontation between two constitutional rights. Petitioner argues that the "gag" order constitutes an impermissible prior restraint on his right to free speech under the first amendment. Respondent maintains that the order was neces-

---

1. The state court judge has allowed petitioner to serve his sentence on weekends. He remains "in custody" pursuant to the order of commitment until his sentence has been fully discharged. *See* 28 U.S.C. § 2254(a); *Port v. Heard*, 764 F.2d 423, 427 (5th Cir.1985).

2. These were the only grounds raised by petitioner in his original application for habeas relief. In a reply brief filed the day before the hearing, petitioner argued for the first time that the "gag" order is unconstitutionally vague. The Court *sua sponte* noted that this argument was never presented to the Texas Court of Criminal Appeals. Petitioner elected to withdraw this ground for relief after the respondent orally moved to dismiss the habeas petition for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(b); *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).

sary to protect the defendants' right to a fair trial under the sixth amendment. This Court must examine the state court record in light of established federal precedent to determine whether the "gag" order passes constitutional muster.

### 1. *Applicable Law*

■ A trial judge has an affirmative duty to guard against prejudicial pretrial publicity in a criminal case. *The News–Journal Corporation v. Foxman*, 939 F.2d 1499, 1512 (11th Cir.1991), *quoting United States v. Noriega*, 917 F.2d 1543, 1549 (11th Cir.), *cert. denied*, 498 U.S. 976, 111 S.Ct. 451, 112 L.Ed.2d 432 (1990). This is necessary to ensure that the defendant receives a fair trial. *News–Journal*, 939 F.2d at 1512. A "gag" order restricting parties and witnesses from making extra-judicial statements about a case may be entered where: (1) there is a clear or serious threat to the fairness of the trial; (2) less restrictive alternatives are not adequate to mitigate the harm; and (3) the order would effectively prevent the threatened danger. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 563, 96 S.Ct. 2791, 2806, 49 L.Ed.2d 683 (1976).

■ Recent cases have drawn a distinction between restrictive orders directed to the media and those imposed on trial participants. Prior restraints against the press are subject to intense scrutiny and presumptively unconstitutional. *Nebraska Press*, 427 U.S. at 569–71, 96 S.Ct. at 2808, *citing New York Times Co. v. U.S.*, 403 U.S. 713, 715, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971). The proponent of such an order must show a "clear and present danger" that extensive pretrial publicity will adversely affect the ability of the defendant to receive a fair trial. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1070–71, 111 S.Ct. 2720, 2742–43, 115 L.Ed.2d 888 (1991). However, orders imposing restrictions on attorneys, parties, and witnesses are entitled to considerably more deference. The standard is whether their extra-judicial statements are "reasonably likely" to prejudice the proceedings. *See, e.g. In re Application of Dow Jones & Com-*

*pany, Inc.*, 842 F.2d 603, 610 (2d Cir.), *cert. denied*, 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988); *Radio & Television News Ass'n v. United States District Court*, 781 F.2d 1443, 1447 (9th Cir.1986). *But cf. CBS, Inc. v. Young*, 522 F.2d 234, 239 (6th Cir.1975) (applying "clear and present danger" test to analyze restrictive order directed to parties in a civil action). The Supreme Court has long recognized that restrictions placed on trial participants are a preferred alternative to prior restraints on the media. *Sheppard v. Maxwell*, 384 U.S. 333, 361, 86 S.Ct. 1507, 1521, 16 L.Ed.2d 600 (1966). Nevertheless, the trial court must try to fashion an appropriate order that protects these competing constitutional rights. *See In re Russell*, 726 F.2d 1007, 1011 (4th Cir.), *cert. denied*, 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984).

### 2. *State Court Proceedings*

Michael Jerome Irvin and two co-defendants were charged with possession of cocaine in state court. The case generated national media attention and wide-spread publicity because Irvin is a member of the Dallas Cowboys football team. A state district judge entered a "gag" order on March 26, 1996 to protect the integrity of the grand jury process. This order was issued without an evidentiary hearing or prior notice to the public. Several newspapers and sports publications filed a motion to vacate or modify the order after the defendants were indicted. The respondent trial judge conducted a hearing on April 16, 1996 and May 1, 1996. A packet of newspaper articles and a videotape of a television news broadcast were introduced into evidence. (SF–5/1/96 Hearing at 27).[3] The parties presented their arguments and the judge took the matter under advisement.

On May 3, 1996, the trial judge made extensive findings regarding pretrial publicity in the case. The judge found that there had been extensive media coverage throughout the initial investigation, grand jury proceedings, and pretrial hearings.

---

3. The videotape was an investigative report aired on television station KXAS. Counsel for Michael Irvin informed the judge that "secret grand jury information" was revealed in this report. (SF–5/1/96 Hearing at 27).

This coverage included: (1) inculpatory statements allegedly made by the defendants; (2) the amount of illegal drugs found by police, the proximity of the defendants to those controlled substances, and possible ownership of drug paraphernalia; (3) statements about the credibility and financial status of the defendants; and (4) fingerprint evidence recovered from the crime scene. The judge specifically noted that an order restricting pretrial publicity was necessary to preserve all venue options and that a delay of the proceedings would not lessen the publicity generated by the case. He determined that the failure to impose a "gag" order would threaten the defendants' ability to receive a fair trial and impair the state's ability to impanel an impartial jury. The judge concluded that "[t]here are no other available remedies that would effectively mitigate the effect of the prejudicial publicity." COURT'S FINDINGS, 5/3/96 at 2–3.

A revised order restricting pretrial publicity was entered the same day. The order prohibits parties, attorneys, and witnesses from making extra-judicial statements or furnishing information that "may reasonably be expected to pose a serious threat to the constitutional guarantees of a fair trial or impair the court's ability to impanel an impartial jury ..." COURT ORDER, 5/3/96 at 2. Petitioner was sworn-in as a witness and admonished about the terms of this order on May 8, 1996. (SF–5/8/96 Hearing at 3–4). Several days later he was interviewed by the television program *Hard Copy*. Petitioner also provided a hidden-camera videotape which purportedly shows Michael Irvin purchasing cocaine and talking about his drug habits. The interview and hidden-camera video were aired on May 20, 1996. (SF– 6/4/96 Hearing at 12–13, 16–17).

Petitioner was cited for contempt on May 29, 1996. A show cause hearing was held on June 4, 1996. Petitioner attempted to justify his conduct and challenged the "gag" order on constitutional grounds. These arguments were rejected by the respondent trial judge. Petitioner was found in contempt of court and punished accordingly. (SF–6/4/96 Hearing at 18–19).

### 3. *Discussion*

Petitioner argues that the "gag" order does not comport with the constitutional requirements imposed by *Nebraska Press*. He maintains that there was no showing of a clear or serious threat to the fairness of the trial, that such a threat was posed by the type of publicity that would result from his statements, and that less restrictive alternatives were available to mitigate the harm. Petitioner also claims that the findings made by the trial judge are insufficient to support the order.

■ It is difficult to envision how the respondent could have conducted a more thorough investigation or crafted a more specific and detailed order. The judge held two hearings, reviewed past media accounts of the case, and entertained arguments from all interested parties. There is no doubt that Michael Irvin would continue to attract widespread media attention as the football season approached. Respondent restricted the trial participants from making extra-judicial statements that "may reasonably be expected to pose a serious threat to the constitutional guarantees of a fair trial or impair the court's ability to impanel an impartial jury ..." COURT ORDER, 5/3/96 at 2. Specific examples of such statements are set forth in the body of the order.[4] Nevertheless, petitioner appeared on a nationally syndicated television program with a hidden camera video that

---

4. The order cites the following examples of extra-judicial statements that "may reasonably be expected to pose a serious threat to the constitutional guarantees of a fair trial or impair the court's ability to impanel an impartial jury"—
(1) statements concerning the expected testimony of a defendant or any witness, or the character, reputation or credibility of any witness;
(2) statements concerning the existence or contents of any confession or statement given by any of the defendants, or the refusal or failure of a person to make a statement; and (3) statements concerning the nature of any evidence which may be presented, or the performance of any tests, the results thereof, or the refusal to perform or to allow to be performed any examination or test.
The order clearly indicates that the list is not intended to be exhaustive. COURT ORDER, 5/3/96 at 2.

purported to show Irvin buying cocaine and talking about his drug habits. It strains the limits of credulity for petitioner to argue that these statements did not threaten the defendants' ability to receive a fair trial.

Petitioner also contends that the trial court failed to consider less restrictive alternatives to mitigate any harm caused by extensive pretrial publicity. He cites to the list of alternatives suggested in *Nebraska Press* and *Sheppard.* These include: (1) a change of venue; (2) postponement of the trial to allow public attention to subside; (3) searching questioning of prospective jurors; (4) emphatic and clear instructions to jurors; (5) closing pretrial proceedings; and (6) sequestration of jurors. *Nebraska Press,* 427 U.S. at 563–65, 96 S.Ct. at 2805; *Sheppard,* 384 U.S. at 356–63, 86 S.Ct. at 1519–22. Respondent correctly notes that only two of these alternatives were available in this case—a change of venue and postponement of the trial.[5] The order indicates that both alternatives were considered and rejected. The judge found that restrictions on pretrial publicity were necessary "to preserve the availability of the option of a change of venue" and "[t]here is no indication that delaying the trial ... would lessen the amount of pretrial publicity in these cases." COURT'S FINDINGS, 5/3/96 at 2–3.

It is also significant that the "gag" order in this case is directed to trial participants and not the press. *Sheppard* recognized that restrictions placed on lawyers, parties and witnesses are a preferred alternative to prior restraints on the media. The Supreme Court admonished that:

> The courts must take such steps ... that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, *witnesses,* court staff, nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function.

*Sheppard,* 384 U.S. at 363, 86 S.Ct. at 1522 (emphasis added). This principle was recently reaffirmed in *Gentile.* The Court

gave direction to its dicta in *Sheppard* and stated that "[w]e expressly contemplated that *the speech of those participating before the courts could be limited."* *Gentile,* 501 U.S. at 1072, 111 S.Ct. at 2743 (emphasis in original).

There is a surprising dearth of authority involving constitutional challenges to restrictive orders directed to witnesses in criminal cases. The most analogous situation is presented by *Russell.* The trial court entered an order prohibiting potential witnesses in a racially-motivated murder case from making any extra-judicial statement "that relates to, concerns, or discusses ... any of the parties or issues such potential witness expects or reasonably should expect to be involved in this case ..." *Russell,* 726 F.2d at 1008. The trial judge did not conduct a formal evidentiary hearing. Nevertheless, the court of appeals upheld the order. The court recognized "the 'necessity' of some 'speculation' and the weighing of 'factors known and unknowable' confronting a trial judge in such a situation." *Russell,* 726 F.2d at 1011, *quoting Nebraska Press,* 427 U.S. at 561–62, 96 S.Ct. at 2804. The court of appeals concluded that the trial judge "acted well within constitutional limits of specificity in light of the difficult task of drafting an order that sufficiently protected the sixth amendment rights of the defendants and at the same time did not unjustifiably trammel petitioners' protected speech activities." *Russell,* 726 F.2d at 1011.

The "gag" order in this case is every bit as specific as the order in *Russell.* It is apparent that the respondent tried to balance the defendants' right to a fair trial with the free speech rights of other trial participants. When these interests clash, "the first amendment must yield to the most fundamental of all freedoms—the right to a fair trial for the accused." *News–Journal,* 939 F.2d at 1512, *quoting Estes v. Texas,* 381 U.S. 532, 540, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543 (1965). The Court is unable to conclude that the order is overly broad or violates the first amendment. This ground for relief should be overruled.

---

**5.** The other alternatives listed in *Sheppard* are only appropriate after a jury has been impanelled and sworn. One of the reasons for the "gag" order in this case was to enable the court to select a fair and impartial jury.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.