[Cite as *Linn v. Utt*, 2024-Ohio-3097.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KAY LINN n.k.a. DILLEY | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2023 CA 00034 |
| DEREK J. UTT | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:      Appeal from the Fairfield County Court of Common Pleas, Domestic Relations Division, Case No. 2008 DR 355

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      August 14, 2024

APPEARANCES:

For Plaintiff-Appellee

ANGELA SEIMER, ESQ.
Seimer Law
437 North Broad Street
Lancaster, Ohio 43130

For Defendant-Appellant

LAUREL A. KENDALL
Kendall Legal Services, LLC
1709 Spielbusch Avenue, Suite 110
Toledo, Ohio 43604

*Hoffman, J.*

**{¶1}** Defendant-appellant D.U. ("Father") appeals the July 25, 2023 Judgment Entry entered by the Fairfield County Court of Common Pleas, Domestic Relations Division, which terminated the shared parenting plan between him and plaintiff-appellee K.D. ("Mother") and granted sole custody of the parties minor children to Mother.

## STATEMENT OF THE CASE AND FACTS

**{¶2}** Mother and Father are the biological parents of two minor children ("Child 1" and "Child 2," individually; "the Children," collectively). The parties were never married. The parties ended their relationship prior to the birth of Child 2, in the summer of 2008. The trial court issued its initial order allocating the parties' parental rights and responsibilities via Judgment Entry/Shared Parenting Decree filed February 2, 2016. The judgment entry incorporated the parties' agreed shared parenting plan, which named both Mother and Father as the residential parent and legal custodian of the Children.

**{¶3}** On November 5, 2021, Mother filed a Motion for Ex Parte Emergency Custody as well as a Motion for Reallocation of Parental Rights and Responsibilities, in which she requested the trial court terminate the parties' shared parenting plan and grant her sole custody of the Children. Mother moved for emergency custody due to increasing concerns about Father's abuse of the Children with the final straw occurring when Father broke Child 1's phone and kicked her to the ground. Via Order filed November 8, 2021, the magistrate granted emergency ex-parte temporary custody of the Children to Mother and suspended Father's parenting time pending further order. Father filed a Motion to Modify Custody Order as to the Allocation of Parental Rights and Responsibilities on November 19, 2021. Like Mother, Father requested the trial court terminate the shared parenting plan and name him sole legal custodian and residential parent of the Children.

The trial court appointed a guardian ad litem ("GAL") for the Children. The trial court ordered the parties to undergo drug testing.

{¶4} On February 24, 2022, Mother filed a motion seeking an order refraining Father from posting on social media. Therein, Mother asserted Father had "made multiple posts on Facebook that include derogative statements regarding the Court and judicial system and that have contained posted photographs of Court documents and pleadings." Motion for Sanctions and for an Order Restraining Defendant from Posting on Social Media at p. 1, unpaginated. Mother added, on February 7, 2022, Father posted a recording of audio from a status conference, and on February 19, 2022, he posted a recording of audio from the ex-parte emergency custody hearing. Father filed a memorandum contra on March 8, 2022.

{¶5} Via Magistrate's Order filed March 9, 2022, the magistrate granted Mother's motion. The magistrate found "the acts of posting pleadings, surreptitiously recording proceedings, posting those recordings to the internet, and posting information about the litigation to be contrary to maintaining decorum in the administration of justice and reasonably likely to prejudice the proceedings." March 9, 2022 Magistrate Order at p. 1, unpaginated. The magistrate ordered:

> During the pendency of this case, including appeals, the adult parties, their attorneys, their agents, and witnesses are enjoined from discussing or disseminating any information, statement, public comments, recordings, pleadings or materials about this pending cause, the status of

the litigation, or about the minor children to any public communications forum or media, regarding these causes or the minor children herein. * * *

All future hearings in this matter shall be held in person and on the record. The adult parties, their attorneys, their agents and witnesses are enjoined from recording proceedings in any manner. No recordings of any proceedings in this matter shall be made except for the official court recording system. No transcripts, excerpts, recordings or partial recordings of the proceedings shall be posted or remain posted to social media, or used for any purpose other than the litigation herein without an order of this Court permitting the dissemination.

*Id.* at pp. 1-2, unpaginated.

**{¶6}** On April 20, 2022, the magistrate conducted a hearing to review the emergency ex-parte order of temporary custody. Via Amended Magistrate Order filed the same day, the magistrate continued the order of emergency temporary custody. The magistrate ordered Mother and Father to enroll in and complete a positive parenting class and file certificates of completion with the court. The magistrate further ordered Father's parenting time with Child 1 be at the direction of the GAL with input from Child 1's counselor and the family counselor, and Father's parenting time with Child 2 be held at the Fairfield County Visitation Center. In a separate entry, the magistrate ordered Mother, Father, and the Children undergo psychological evaluations, as well as child custody and companionship evaluations.

**{¶7}** After the trial court permitted Father's second attorney to withdraw on September 13, 2022, Father proceeded pro se and filed various motions including, inter alia, motions to disqualify Mother's attorney, the GAL, and the magistrate; a motion to release all police, sheriff, and fire department records as well as records from Fairfield County Children Protective Services; a motion to hold Mother, the magistrate, and the trial court in contempt; a motion to dismiss gag orders; a motion to order Mother to complete an appropriate rehab program; and a motion to drug test Mother and her husband and order Mother and her husband to wear alcohol monitors.

**{¶8}** The parties appeared before the trial court on March 13, 2023, for a GAL conference and a settlement conference. The parties entered into an agreed judgment entry relative to Father's parenting time with the Children. As of the hearing, Father had not responded to Mother's First Set of Interrogatories and Request for Production of Documents, which were propounded on him on November 23, 2021, and which the trial court had previously ordered him to complete on or before April 25, 2022. The trial court extended the deadline until March 31, 2023, and warned Father his failure to fully comply could result in the trial court limiting the evidence he would be permitted to introduce at trial.

**{¶9}** Mother filed a motion for contempt on March 16, 2023, based upon Father's failure to remove his previous social media posts about the matter and making over 100 new posts since the March 9, 2022 Magistrate Order. On March 28, 2023, the GAL filed a motion to suspend Father's parenting time, explaining the Children refused to have visitation due to Father's actions, which included Father posting on Facebook accusations against Child 2's football coaches and Father's refusal to remove the posts, Father

contacting the Lancaster Police Department requesting Mother be arrested and charged for interfering with his parenting time, and Father's threatening to affect a citizen's arrest of Mother.

{¶10} Because Father failed to comply with the trial court's March 31, 2023 discovery deadline, Mother filed a motion to exclude Father's evidence and witnesses on April 5, 2023.  Mother filed a memorandum in support of this motion on April 13, 2023. Via Judgment Entry filed April 14, 2023, the trial court found Father failed to respond to discovery and also failed to comply with the trial court's September 15, 2022 case scheduling order.  Accordingly, the trial court limited Father's ability to call witnesses and introduce into evidence any exhibits except for email and text communications between the parties, which could only be used for impeachment purposes.

{¶11} The GAL filed her report on April 11, 2023.  The GAL recommended the shared parenting plan be terminated and Mother be designated as residential parent and legal custodian of the Children.  The GAL further recommended Father's parenting time with Child 1 be suspended pending successful reunification counseling , Father's parenting time with Child 2 be suspended until Father removed all social media posts and public statements about Child 2's coaches, the parties follow and complete all recommendations contained in their respective psychological reports, the parties not use corporal punishment with the Children, the parties not speak in a derogatory manner or fashion about the other in the presence of the Children, and Father not permanently remove the Children from the jurisdiction.

{¶12} The matter proceeded to trial on April 17, 2023, and lasted four (4) days. The trial court conducted an in-camera interview of the Children on May 8, 2023.

**{¶13}** Via Judgment Entry filed July 25, 2023, the trial court terminated the shared parenting plan and awarded sole custody of the Children to Mother. After conducting an exhaustive analysis of the factors set forth in R.C. 3109.04(F)(1), the trial court found, based upon all evidence presented at the trial, shared parenting was not in the best interest of the Children. The trial court also found, "[b]ased on the facts that have arisen since the prior decree or that were unknown to the Court at the time of the decree, a change has occurred in the circumstances of the child [sic] because the Court has determined that shared parenting is not in the best interest of the minor children and the Court herein terminated the Shared Parenting Plan of Both Parties filed February 2, 2016[,] in accordance with R.C. 3109.04(E)(2)(c)." July 25, 2023 Judgment Entry at p. 47. In addition, the trial court granted Mother's contempt motions filed March 17, 2022, and March 16, 2023, finding Father in contempt for violating the trial court's gag order filed March 9, 2022.

**{¶14}** It is from this judgment entry Father appeals, raising the following assignments of error:[1]

> I. THE COURT COMMITTED PLAIN ERROR WHEN IT TERMINATED THE SHARED PARENTING DECREE OF THE PARTIES WITHOUT FINDING A SEPARATE CHANGE OF CIRCUMSTANCES, IN

---

[1] Under the heading, "ASSIGNMENTS OF ERROR," Father listed his assignments of error in the order presented herein. However, within his Brief, Father addressed Assignments of Error III and IV before Assignment of Error II.

ADDITION TO THE BEST INTEREST ANALYSIS, ARGUABLY IN VIOLATION OF R.C. 3109.04(E)(1)(a).

II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND APPELLANT IN CONTEMPT OF A GAG ORDER PROHIBITING FUTURE POSTINGS OF PUBLIC INFORMATION, WHICH ORDER WAS ARGUABLY AN UNCONSTITUTIONAL RESTRAINT ON PROTECTED SPEECH, IN VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION.

III. THE TRIAL COURT ABUSED ITS DISCRETION, OR COMMITTED PLAIN ERROR, WHEN IT ADMITTED UNCERTIFIED EXHIBITS WHICH WERE PREJUDICIAL TO APPELLANT.

IV. THE TRIAL COURT'S AWARD OF CUSTODY OF BOTH MINOR CHILDREN TO MOTHER WITH PARENTING TIME FOR FATHER AT THE DISCRETION OF THE CHILDREN, WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF PROPERLY ADMITTED EVIDENCE.

I

**{¶15}** In his first assignment of error, Father contends the trial court committed plain error in terminating the parties' shared parenting agreement without finding a change in circumstances.  We disagree.

**{¶16}** "R.C. 3109.04 establishes the process for allocating parental rights and responsibilities between the parents of a minor child." *Bruns v. Green*, 163 Ohio St.3d 43, ¶ 8 (2020). "In addition to outlining how a trial court initially allocates parental rights and

responsibilities, R.C. 3109.04 also sets forth the procedures to be followed in the event that either a parent or the trial court finds it necessary to make changes to a shared-parenting decree or plan." *Id.* at ¶ 9. "The procedures differ depending on whether the trial court intends to modify a decree that allocates parental rights and responsibilities, modify the terms of a shared-parenting plan, or terminate a shared-parenting decree and plan." *Id.*

{¶17} Pursuant to R.C. 3109.04(E)(1)(a), a trial court may modify a decree which allocates parental rights and responsibilities for the care of children, including shared parenting decrees. The statute provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a).

**{¶18}** While R.C. 3109.04(E)(1)(a) allows for modification of a shared-parenting decree, R.C. 3109.04(E)(2)(a) and (b) allow for the modification of the terms of a shared parenting plan. "In contrast to subsection (E)(1)(a), which outlines how to modify a custody decree, and subsections (E)(2)(a) and (b), which outline how to modify the terms of a shared-parenting plan, subsection (E)(2)(c) provides the procedures for *terminating* a shared-parenting decree which includes a shared-parenting plan." *Bruns*, 163 Ohio St.3d 43, at ¶ 12.

**{¶19}** R.C. 3109.04(E)(2)(c) provides:

The court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children.

R.C. 3109.04(E)(2)(c).

{¶20} In Mother's Motion for Reallocation of Parental Rights and Responsibilities and Father's Motion to Modify Custody as to the Allocation of Parental Rights and Responsibilities, each parent sought termination, not modification, of the shared parenting plan. Under the plain language of R.C. 3109.04(E)(2)(c), the trial court was "not required to find a change in circumstances, in addition to considering the best interest of the child, before terminating a shared-parenting plan and decree and designating one parent as the residential parent and legal custodian." *Bruns*, 163 Ohio St.3d 43, at ¶ 21.

{¶21} In its July 25, 2023 Judgment Entry, the trial court conducted an exhaustive analysis of the best interest factors set forth in R.C. 3109.04(F), and concluded termination of the shared parenting plan was in the best interest of the Children. The trial court further found, although statutorily not required to do so, "[b]ased on the facts that have arisen since the prior decree of that were unknown to the Court at the time of the prior decree, a change has occurred in the circumstances of the [Children] because the Court has determined that shared parenting is not in the best interest of the [Children]." July 25, 2023 Judgment Entry, p. 47, ¶ 288.

{¶22} Based upon the foregoing, we find the trial court did not err, let alone commit plain error, in terminating the parties' shared parenting plan.

{¶23} Father's first assignment of error is overruled.

II

{¶24} In his second assignment of error, Father asserts the trial court abused its discretion in finding him in contempt of a gag order, which prohibited future postings of what he claims to be public information. Father posits the gag order was arguably an

unconstitutional restraint on protected speech, in violation of the First Amendment of the United States Constitution.

**{¶25}** Under the First Amendment of the United States Constitution,  the " 'government [generally] has no power to restrict expression because of its message, its ideas, its subject matter, or its content.' " *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983), quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Bey v. Rasawehr*, 2020-Ohio-3301, ¶ 31, citing  *Reed v. Gilbert,* 576 U.S. 155, 163 (2015). "[R]egulation of speech that is content-based is presumptively unconstitutional and is subject to strict scrutiny, which requires that it be the least restrictive means to achieve a compelling state interest."  *Bey* at ¶ 22 (Citation omitted). "The right to free speech secured by the First Amendment is not absolute, however, and the government may regulate it in a manner that is consistent with the Constitution." *Bey v. Rasawehr*, 2020-Ohio-3301, ¶ 21, citing *Virginia v. Black,* 538 U.S. 343 (2003).

**{¶26}**  In her March 9, 2022 order, the magistrate, citing *In re K.Z.P.*, 2016-Ohio-3091, noted the issuance of a gag order was "within the court's prerogative to maintain decorum in the administration of justice and protect litigants from prejudice."  The magistrate found "the acts of posting pleadings, surreptitiously recording proceedings, posting those recordings to the internet, and posting information about the litigation to be contrary to maintaining decorum in the administration of justice and reasonably likely to prejudice the proceedings." March 9, 2022 Magistrate Order at p. 1, unpaginated.  As a result, the magistrate ordered:

During the pendency of this case, including appeals, the adult parties, their attorneys, their agents, and witnesses are enjoined from discussing or disseminating any information, statement, public comments, recordings, pleadings or materials about this pending cause, the status of the litigation, or about the minor children to any public communications forum or media, regarding these causes or the minor children herein. * * *

All future hearings in this matter shall be held in person and on the record. The adult parties, their attorneys, their agents and witnesses are enjoined from recording proceedings in any manner.  No recordings of any proceedings in this matter shall be made except for the official court recording system.  No transcripts, excerpts, recordings or partial recordings of the proceedings shall be posted or remain posted to social media, or used for any purpose other than the litigation herein without an order of this Court permitting the dissemination.

*Id.* at pp. 1-2, unpaginated.

**{¶27}** The trial court found the magistrate's gag order was content based, but necessary to achieve "[t]he compelling state interest" in "the right to a fair trial, which is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." July 25, 2023 Judgment Entry p. 56, ¶¶ 344, 346.  "[O]ccasionally, one party's right to free speech may conflict with another party's right to a fair trial. * * * When these two constitutional guarantees collide, the right to free speech occasionally must

yield to the right of a fair trial." *Same Condition, LLC v. Codal, Inc.*, 187 N.E.3d 1147, (Ill. App. 1 Dist., 2021) (Internal citations omitted).

**{¶28}** "[T]rial courts have a wide discretion in being able to protect the judicial process from influences that pose a danger to effective justice." *In re Scaldini,* 2008–Ohio–6154, ¶ 1.2, citing *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (C.A.10, 1986). "This includes the authority to issue gag orders." *Id.*, citing *United States v. Tijerina*, 412 F.2d 661, 666 (C.A. 10, 1969). Orders imposing restrictions on attorneys, parties, and witnesses are entitled to considerably more deference than prior restraints that are imposed against the press.  *Id.*, citing *Pedini v. Bowles*, 940 F.Supp. 1020, 1023 (N.D. Texas, 1996); see, also, *In re T.R.*, 52 Ohio St.3d 6, 40 (1990) (recognizing that gag orders imposed upon parties and their counsel "are considered a less restrictive alternative to restrictions imposed directly on the media").

**{¶29}** "Gag orders fall within the Court's prerogative to maintain appropriate decorum in the administration of justice and protect the rights of the litigants from prejudice." *In re Scaldini,* 2008–Ohio–6154, ¶ 13, citing *Affeldt v. Carr*, 628 F.Supp. 1097, 1101 (N.D. Oh. 1986). The standard applied to gag orders imposing restrictions on parties is whether the extra-judicial statements are "reasonably likely" to prejudice the proceedings. *Pedini,* 940 F.Supp. at 1023.

**{¶30}** "The First Amendment does permit[ ] restrictions upon the content of speech in a few limited areas." *Bey*, 2020-Ohio-3301, ¶ 38 (Internal quotations and citations omitted). "Those categories include: advocacy intended, and likely, to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called 'fighting words'; child pornography; fraud; true threats; and speech presenting some grave

and imminent threat the government has the power to prevent * * *." *Id.* (Internal quotations and citations omitted.)

**{¶31}** Upon review of the record, we agree with the trial court's finding Father "used his social media posts to influence, intimidate, and/or retaliate against witnesses and potential witnesses in this case." July 25, 2023 Judgment Entry p. 58, ¶ 350. Because the gag order was a temporary order issued while the matter was pending and was used to "maintain appropriate decorum in the administration of justice and protect the rights of the litigants from prejudice," *In re Scaldini,* 2008–Ohio–6154, ¶ 13 (Citation omitted), we find such was not a violation of Father's First Amendment right to free speech.

**{¶32}** Father's second assignment of error is overruled.

III

**{¶33}** In his third assignment of error, Father maintains the trial court abused its discretion or committed plain error in admitting uncertified exhibits, which were prejudicial to him.

**{¶34}** The admission or exclusion of evidence lies in a trial court's sound discretion "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake County,* 58 Ohio St.3d 269, 271 (1991); *State v. Sage,* 31 Ohio St.3d 173 (1987). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, (1990). An unreasonable decision is one backed by no sound reasoning process which would

support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

**{¶35}** It is undisputed Father did not move to exclude the exhibits or otherwise object to the admission of the evidence at trial; therefore, Father waived all but plain error. *State v. Frazier*, 1995-Ohio-235.

**{¶36}** Crim.R. 52(B) provides, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For a reviewing court to find plain error, the court must find that the error is an obvious defect in trial proceedings which affected the defendant's substantial rights. *State v. Barnes,* 2002-Ohio-68. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, paragraph three of syllabus (1978). An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Roby*, 2022-Ohio-223, ¶ 19.

**{¶37}** At trial, Mother offered into evidence over 100 exhibits which included social media posts and text messages purportedly authored by Father. During his cross-examination, Father was presented with these exhibits. Father was repeatedly asked whether he authored the social media posts and text messages. Father never denied the authenticity of any of the exhibits, but responded he could not confirm the authenticity of particular exhibits "because this isn't subpoenaed and it's out of context." Transcript of Proceedings at p. 22. Notably, Father did admit he posted on social media [e]very day." Tr. at p. 27. When questioned about one particular social media post, Father replied,

"That's what it says. * * * That's what your exhibit says." *Id.* at pp. 27-28. Father never denied authoring any of the text messages or posting the photos or social media posts offered as exhibits.

**{¶38}** We find Father's non-answers do not constitute objections to the exhibits or denials of the authenticity of the exhibits. We further find the exhibits were self-authenticating based upon the content of the social media posts and the text messages. Accordingly, we find the trial court did not err, let alone commit plain error, in admitting the exhibits.

**{¶39}** Father's third assignment of error is overruled.

IV

**{¶40}** In his final assignment of error, Father submits the trial court's award of custody of the Children to Mother with Father's parenting time at the discretion of the Children was not supported by the manifest weight of properly admitted evidence.

**{¶41}** We review a trial court's decision regarding an award of custody for an abuse of discretion. *In re D.T.,* 2023-Ohio-2245, ¶ 44, citing *A.L. v. K.T.,* 2016-Ohio-2865, ¶ 10, citing *In re Brown,* 142 Ohio App.3d 193, 198 (2001). More than mere error of judgment, an abuse of discretion requires the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Given the nature and impact of custody disputes, the trial court's discretion will be accorded paramount deference because the trial court is best suited to determine the credibility of testimony and integrity of evidence. *Gamble v. Gamble,* 2008–Ohio–1015, ¶ 28. Specifically, "the knowledge a trial court gains through observing witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed

record." *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Therefore, with due deference to the trial court, a reviewing court will not reverse the findings of a trial court when the award of custody is supported by a substantial amount of credible and competent evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

**{¶42}** In its July 25, 2025 Judgment Entry, the trial court detailed the testimony of every witness who testified at trial, including the GAL, Child 1's counselor, and Mother's family and friends.  The trial court's summary of the GAL's testimony and Child 1's counselor's testimony was exhaustive.  Based upon our review of the trial court's thorough judgment entry, the analysis contained therein, as well as the entire record in this matter, we do not find that the trial court abused its discretion in terminating the parties' shared parenting plan and granting sole custody of the Children to Mother.

**{¶43}** Father's fourth assignment of error is overruled.

**{¶44}** The judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed.


By: Hoffman, J.
Gwin, P.J.  and
King, J. concur